# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

MARILYN ENGLISH,

        Petitioner,

v.                          CIVIL ACTION NO.    2:22-cv-00540

ELLEN HEINE, et al.,

        Defendants.

### PROPOSED FINDINGS & RECOMMENDATION

      This matter is assigned to the Honorable Thomas E. Johnston, Chief United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 2.) Pending is a Motion to Remand filed by counsel for Petitioner Marilyn English ("Petitioner")—through Petitioner's guardian, the West Virginia Department of Health and Human Resources ("WVDHHR"), in response to the Notice of Removal filed by Respondent Ellen Heine ("Heine") on behalf of herself as well as on behalf of Respondent Gregory Knorr ("Knorr"), and Respondent Kevin Keane ("Keane")[1] (collectively, the "Respondents"); the Respondents are proceeding *pro se*, both presently and at all relevant times herein. (ECF Nos. 1; 4.) For the reasons set forth below, the undersigned respectfully **RECOMMENDS** that Petitioner's motion be **GRANTED**.

---

[1] While the Notice of Removal refers to Respondent Kevin "Keane," the Respondent's surname is spelled "Keene" in several exhibits on the record. (*Compare* ECF No. 1, *with* ECF No. 5-2. *See also* ECF No. 8 at 3.) For clarity, the undersigned refers to the Respondent's surname uniformly herein as "Keane."

## I.      BACKGROUND

At the time of the events giving rise to this action, Petitioner—a person over the age of 65—resided at her home in Verona, New Jersey, where she had been politically active for many years. (ECF No. 1-3.)[2] Petitioner also owned a summer house in Maine. (ECF No. 4 at 2.) Respondents—Keane, of Maine, and Heine and Knorr, of New Jersey— dispute the nature of their relationship, but admittedly "befriended" Petitioner over a period of time. (*See* ECF Nos. 1-3 at 1; 4 at 2; 5-2 at 17.) In September 2022, Petitioner called another friend to ask for help because she was "not being treated well." (ECF No. 5-1 at 4.) After wellness checks to Petitioner's home went unanswered, local police officers in New Jersey (the "NJP") were assigned to investigate Petitioner as a missing person. *Id.* Learning of Petitioners' association with the Respondents, the NJP discovered that Respondent Heine had "prior arrests/pleas to financial exploitation, [and] elder abuse," and that Heine owned "homes in West Virginia." (ECF Nos. 4 at 6; 5-1 at 4.) Further investigation determined that Heine and one or more of the other Respondents had transported Petitioner to Kanawha County, West Virginia. *Id.*

Suspecting kidnapping, the NJP alerted the Charleston Police Department ("CPD"), reporting that Respondent Heine had refused all demands to return Petitioner home, and, further, that the three Respondents had liquidated Petitioner's bank assets, sold household goods, and taken possession of Petitioner's vehicle. (ECF No. 5-1 at 4.) Acting on the NJP's alert, the CPD located Petitioner in the company of Respondent Heine and one or more of the other Respondents. *Id.* Finding that Petitioner was disoriented and in need of medical attention, the CPD officers then transported Petitioner to the

---

[2] *See also* Virginia Citrano, *English Runs for County Executive*, MyVeronaNJ (Oct. 8, 2010), https://myveronanj.com/2010/10/08/english-runs-for-county-executive/.

Charleston Area Medical Center ("CAMC") in Charleston, West Virginia, for evaluation. *Id.* CAMC staff found indicators for dementia, and reported that Petitioner believed she was still in New Jersey—with no memory of agreeing to come to West Virginia. *Id.*

During Petitioner's hospitalization, Respondents acted "belligerent and aggressive with CAMC staff," demanding that staff members discharge Petitioner into Respondents' custody. *Id.* CAMC staff reported that, when these demands were refused, Respondents began an unrelenting campaign of harassment and threatening behavior toward "hospital staff and others" in person and over the telephone, combined with "multiple attempts . . . to remove [Petitioner] from the hospital" forcibly, which "caused [Petitioner] great fear of physical harm, harassment, and abduction." (ECF No. 4 at 3.) Fearing that Respondents would "once again kidnap [Petitioner]," CAMC involved the West Virginia Department of Health and Human Resources ("WVDHHR")—a State agency—which in turn initiated an emergency petition for guardianship in the Circuit Court of Kanawha County, West Virginia ("Kanawha Circuit Court"), Case Number 2022-G-70 (the "Guardianship action"). The Circuit Court appointed Attorney Jennifer N. Taylor to represent Petitioner, and on September 23, 2022, declared Petitioner a "Protected Person" pursuant to West Virginia Code § 44A-1-1 *et seq. Id.[3]*

On September 20, 2022, Petitioner—by her counsel, Attorney Taylor, through Petitioner's Guardian, the WVDHHR—initiated three separate summary proceedings in the Magistrate Court of Kanawha County, West Virginia (the "Kanawha Magistrate

---

[3] On October 25, 2022, Respondent Heine moved "to be considered for the position of co-guardian" for Petitioner in the Guardianship action, and was denied; apart from Respondent Heine's own alleged role in precipitating the action, as a non-relative she was not entitled to participate pursuant to W. Va. Code § 44A-1-1, *et seq.* (ECF No. 5 at 5.) In any event, the Guardianship action is not before this Court and is relevant only to the fact of Petitioner's protected status under West Virginia law. (*See* ECF Nos. 1; 5 at 5.)

Court"), seeking a Temporary Personal Safety Order ("TPSO") against Respondents Knorr, Keane, and Heine, respectively. (ECF Nos. 5-1; 5-3.)[4] The Kanawha Magistrate Court assigned individual Case Numbers to each Petition (collectively, the "Magistrate Court matters").[5] (ECF Nos. 5-1; 5-3.) Attorney Taylor alleged in the Petitions that a TPSO against the Respondents was necessary "in order to shield [Petitioner] Marilyn English from elder abuse, exploitation, and aggression on the part of the [Respondents] Heine, Knorr, and Keane, and to keep them away from [Petitioner] and CAMC staff." (ECF No. 4 at 3.) The three Magistrate Court matters did not involve monetary relief in any form, nor any type of relief with respect to any real or personal property. Rather, the Petitioner sought only to restrain Respondents from contacting her, entering her residence, or further harassing her. (*See* ECF No. 5-3.)

That same day, Kanawha County Magistrate Rusty Casto issued a TPSO, *ex parte*, in each of the three Magistrate Court matters. (*See* ECF No. 5-3 at pp. 1-6 (Heine), 13-18 (Keane), 25-30 (Knorr).) The TPSOs merely prohibited Respondents, pursuant to W. Va.

---

[4] West Virginia statute permits the guardian of an incapacitated adult to petition for a TPSO, which prohibits a respondent from threatening or harassing the petitioner under certain circumstances. *See* W. Va. Code §§ 53-8-1 through 53-8-5. A TPSO is effective for ten days; additionally, after providing the Respondent with notice and an opportunity to be heard, a final personal safety order ("FPSO") may be entered, with an effective period of up to two years. *Id.* § 53-8-7.

[5] The Magistrate Court matters are summarized in the following table:

| Date Filed | Case Number | Petitioner | Respondent |
|---|---|---|---|
| 09/20/2022 | 22-M20S-00477 | Marilyn English, By Next Friend and Attorney Jennifer N. Taylor | Gregory Knorr |
| 09/20/2022 | 22- M20S-00478 | Marilyn English, By Next Friend and Attorney Jennifer N. Taylor | Kevin Keane |
| 09/20/2022 | 22- M20S-00479 | Marilyn English, By Next Friend and Attorney Jennifer N. Taylor | Ellen Heine |

(*See* ECF Nos. 5-1; 5-3.)

Code § 53-8-5(a), from (1) committing harassment or making threats of bodily injury; (2) contacting, attempting to contact, or harassing the Petitioner; (3) entering Petitioner's home; or (4) entering CAMC, as Petitioner's temporary residence. *See id.* Under West Virginia law, each TPSO would be effective for only ten (10) days, after which the time period could be extended only by the Magistrate or upon a showing of good cause. W. Va. Code § 53-8-5(c). Each TPSO also contained a Notice with the date, time, and location of a final hearing to determine if long-term, final personal safety orders ("FPSO") were warranted under W. Va. Code § 53-8-7(a)(2). *See id.* (*See, e.g.*, ECF No. 5-3 at 26.) The same day the TPSOs were issued, the Kanawha Magistrate Court served Respondents via certified mail at their last known addresses. (ECF Nos. 5 at 4; 5-1.)

The final hearing date was subsequently extended several times at the request of Petitioner's counsel. (ECF Nos. 5 at 4; 5-4 at 1-6, 11.)  On November 15, 2022, before the date of the final hearing, Respondent Heine filed a "Response" to the Petition for "[T]PSO filed by the Petitioner Marilynn English of 97 Pease Avenue, Verona, N.J" in Case Number 22-M20S-00479—the Magistrate Court matter in which Heine was named. (ECF No. 1-2.) Heine's Response challenged the Petition's factual allegations, instead characterizing Heine's relationship with Petitioner as "voluntary," "at will," and motivated by altruism.[6] However, the Response immediately undercut this sympathetic portrayal with a list of threats so thinly veiled and artlessly written that they manifest a clear purpose to intimidate Petitioner from persisting further against Heine. For instance, Heine stated in the Response that "[i]f the Petitioner were to be charged" for perjuring herself in the

---

[6] In support, Heine attached exhibits to the Response demonstrating her past involvement in environmental lawsuits and political activism with Petitioner, as well as an image purportedly depicting Heine's use of Petitioner's vehicle to transport Petitioner's personal property between Petitioner's Maine and New Jersey houses—purportedly at Petitioner's behest. (ECF Nos. 1-2; 1-3. *See also* ECF No. 5-2 at 17.)

Petition for TPSO, "as an incompetent [Petitioner] would subject herself to the maximum term and it would be served in a mental hospital such as Sharpe Hospital in Weston, WV." *Id.* at 2. Heine next warned that in the event *Petitioner* were to violate a TPSO that *Heine* were to obtain in the future, Petitioner "would serve the maximum term in a mental facility." *Id.* Heine then doubled down with the chilling statement that "[a]t [Petitioner's] age [of] 74 there is a question if the Petitioner will live long enough" to regain her competency after serving these amorphous, "maximum" terms in "mental" institutions. *Id.* Respondent Heine concluded her Response with a request "that the court schedule a hearing to dissolve the [T]PSO or in the alternate to award the same restrictions to the [Respondent] in the form of a [T]PSO . . . restraining [Petitioner] from any interactions with the Respondent[.]" *Id.* at 2-3.

Respondent Heine also filed a motion seeking the transfer of all three Magistrate Court matters from Kanawha Magistrate Court to Kanawha *Circuit* Court, on the grounds that "additional discovery is needed to accurately address the allegations" in each Petition for TPSO, which Respondent Heine characterized as a "complaint." (ECF No. 5-4 at 14.) Attorney Taylor responded that Petitioner did not object to the transfers; instead, "[f]or purposes of judicial economy," she moved to consolidate the three Magistrate Court matters "into one case before a Circuit Court Judge." *Id.* at 16. Attorney Taylor explained that "[t]he petitions for protective orders were all filed as a result of combined actions of the Respondents" and involved many of the same witnesses and exhibits; consequently, "the consolidation of the three cases is logical and practical." *Id.*

On November 28, 2022—before the final hearing, and apparently before a ruling was made on the motion to transfer or the motion to consolidate—Respondent Heine filed a single-page Notice of Removal "to remove *the case* filed in the Circuit Court of Kanawha

County, 22M20S00477 *to 479*," to this Court. (ECF No. 1 (emphasis added).) In support

of removal, Respondent Heine asserted the following:

1. This case was filed by the Plaintiff, and pending in the Circuit Court of Kanawha County, WV. Plaintiff's attorney represents that Plaintiff is a resident of WV.

2. This removal is pursuant to 28 U.S.C. § 1332. Defendants agree to the removal. Heine resides [in New Jersey], . . . Knorr resides [in New Jersey], . . . and Keane resides [in Maine].

3. This Court has jurisdiction because the amount in controversy exceeds $245,000.00. Plaintiff makes claims of loss/theft of bank accounts, personal property, and theft of real estate which exceeds the threshold filing requirements.

4. Notice of removal is timely. Keane has not yet been personally served with the [Petition, which Respondent Heine characterized as a] complaint. Heine did not receive personal service, and only received a mailed copy.

5. The defendants consent to the removal of this case to the US District Court.

*Id.* The Notice of Removal employed a misleading description of the Magistrate Court

matters. Referencing Case Numbers "22M20S00477 to 479," the Notice clearly purported

to remove all three matters, while minimizing their distinction by referring to them

collectively as "[t]his case" and "the case." *Id.* Based upon the record before the Court,[7]

Petitioner's motion to consolidate remained pending at the time of removal; however, the

---

[7] In setting forth the procedure for removal of civil actions, Congress expressly required that "defendants desiring to remove any civil action from a State court shall file in the district court of the United States . . . a copy of all process, pleadings, and orders served upon such defendant or defendants in such action." 28 U.S.C. § 1446(a). Upon the Court's review of the record, however, it appears that Respondents have complied with this requirement only in part—further obfuscating a full picture of the proceedings before the Kanawha County courts. For instance, Respondent Heine attached to the Notice of Removal copies of Petitioner's Petition for TPSO against Respondent Heine, as well as Heine's Response, which were both filed in the Magistrate Court matter in which Heine was named, Case Number 22-M20S-00479; however, Heine did not submit to this Court copies of *any* documents from the remaining Magistrate Court matters that named Respondents Knorr (22-M20S-00477) and (Keane 22-M20S-00478), respectively. (ECF Nos. 1-1; 1-2; 1-3.)

Notice omitted that fact, and failed to disclose that "the case" was actually comprised of three distinct civil actions. *See id.* Likewise, the Notice represented that the Magistrate Court matters were "pending in the Circuit Court of Kanawha County." *Id.* Based upon the record before the Court, however, the motion to transfer remained pending in the Kanawha Magistrate Court at the time of removal. Finally, Respondent Heine—who is not an attorney licensed to appear before this Court—signed and filed the Notice of Removal on behalf of herself *as well as* on behalf of Respondents Knorr and Keane. *See id.*

Subsequently on December 16, 2022, Attorney Taylor filed the subject motion seeking remand to the Kanawha Magistrate Court, arguing that this Court lacks subject matter jurisdiction, removal was untimely, and Respondent Heine—a non-lawyer proceeding *pro se*—was representing the Respondents without a license by submitting filings on their behalf in the two Magistrate Court matters in which she was not a named party. (*See* ECF Nos. 4; 5.) Respondents Heine and Knorr failed to file a formal response to Petitioner's subject motion to remand. However, on January 17, 2023, Respondent Keane submitted a handwritten cover letter to this Court's Office of the Clerk and attached a typewritten document titled "Notice of Removal of Civil Action," which his cover letter characterized as a "motion of removal" (the "Keane Notice"). (ECF No. 8.) The Keane Notice bears indicia that it may have been elicited—if not wholly prepared—by Respondent Heine on Keane's behalf to cure the issues Petitioner raised in the motion to remand. *See id.* First, Keane's handwritten cover letter employs passive, slightly garbled language—such as his statement that "[t]his matter has been timely filed on my pro se, self to remove the case[.]" *Id.* at 3. In contrast, the attached Keane Notice employs more articulate language and is typewritten in *precisely* the same format as Respondent Heine's own Notice of Removal. (*Compare* ECF No. 1, *with* ECF No. 8.) Further, the style

and substantive content of the former Notice precisely echo the latter. *See id.* Moreover, just as Respondent Heine's Notice purported to remove all three matters but contained only Heine's signature, the Keane Notice likewise described "the case" collectively as "22M20S00477 to 479," yet contained only Keane's signature. (ECF No. 8 at 2.)

In fact, the Keane Notice differs from Respondent's Heine's original Notice of Removal in only one material respect: it draws from a separate action filed by Petitioner against Keane involving money damages (the "Financial Exploitation case").[8] *See id.* Vaguely alluding to the Financial Exploitation case, but sidestepping its distinction as a separate action, the Keane Notice asserts the following:

> This Court has jurisdiction because the amount in controversy exceeds $245,000.00. Plaintiff knows that the threshold amount of $75,000 is exceeded because she reviewed the market analysis for her home in Millbrige Maine and instructed me to list the home . . . . She now alleges that I owe her all of that money and she has a court order directing me to pay her the demanded amount, including court costs and lawyer fees. Plaintiff makes claims that I sold her possessions and owe her the full replacement value of her belongings.

*Id.* at 1 ¶ 4. Thus, by invoking the Financial Exploitation case, the Keane Notice attempts to bolster the amount-in-controversy element of subject-matter jurisdiction under 28 U.S.C. § 1332. "Keane" admits as much therein, stating as follows:

> Judicial notice should be taken that [Kanawha County Circuit Court] Judge Webster noted in her order that the financial issues and the protected person order were "inextricably" intertwined. What she was saying was that the financial abuse allegations were the reason why a protective order and guardianship would be granted. Therefore without the financial abuse allegations the Plaintiff would not be able to make claims for the need for

---

[8] Along with the Guardianship action and the Magistrate Court matters mentioned above, Petitioner's counsel initiated a fourth separate action by filing a "Petition for Financial Exploitation Protective Order" against Respondent Keane in Kanawha Magistrate Court, Case Number 22-AF-10 (the "Financial Exploitation case"). (ECF No. 5-2.) Respondent Keane appealed the Financial Exploitation case to the Intermediate Court of Appeals of West Virginia, Case Number 22-ICA-189. *Id.* at 11-19. However, Respondents Knorr and Heine were not parties to that action, and Respondents did not include it with the three Magistrate Court matters that were collectively removed to this Court—either via Respondent Heine's Notice of Removal, or via the Keane Notice in the instant action. (ECF Nos. 1; 8; *see also* ECF No. 5-2.)

the [T]PSO. Bank accounts, personal items from two homes and the sale of two homes more than exceeds the $75,000 threshold.

(ECF No. 8 at 2 ¶ 4.) Additionally, the Keane Notice addresses the issue of timeliness raised in Petitioner's motion to remand. *See id.* ¶ 5. Consequently, while Respondents did not file a formal response to Petitioner's motion to remand, the Keane Notice functions much like a response by addressing—albeit indirectly—the issues raised in Petitioner's motion.

The parties' deadline to submit responsive briefs having expired pursuant to Rule 7.1(a)(7) of the Court's Local Rules of Civil Procedure, Petitioner's subject motion to remand is now ripe for adjudication.

## II.    STANDARD OF REVIEW

A civil action may be removed from State court only if "the district courts of the United States have original jurisdiction" over the subject matter of the case. 28 U.S.C. § 1441(a). *See also Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant."). Original jurisdiction is narrow in scope, as "[f]ederal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986); *In re Bulldog Trucking, Inc.*, 147 F.3d 347, 352 (4th Cir. 1998).  Generally, "[o]riginal subject matter jurisdiction in the United States District Courts exists in one of two circumstances: (1) when a "federal question" is presented, or (2) when there is complete "diversity of citizenship" between the parties, *and* the "amount in controversy" exceeds $75,000. *Tri-State Prop. Rentals, LLC v. Cabell Cty. Mag. Ct.*, No. 3:23-CV-00072, 2023 WL 2960804, at *6–7 (S.D.W. Va.

Mar. 20, 2023), *adopted*, 2023 WL 2957482 (S.D.W. Va. Apr. 14, 2023) (citing 28 U.S.C. §§ 1331, 1332). "There is no presumption that a federal district court has subject matter jurisdiction[.]" *Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999).

Moreover, the Court "must strictly construe removal jurisdiction," because it raises "significant federalism concerns." *Mulcahey v. Columbia Organic Chems. Co., Inc.*, 29 F.3d 148, 151 (4th Cir. 1994). When a civil action arrives in federal court via removal under 28 U.S.C. § 1441, therefore, "the removing defendant has the burden of establishing subject matter jurisdiction[.]" *Castle Credit Co. Holding, LLC v. Riley*, 3:17-cv-2591, 2018 WL 259092, at *1 (D.S.C. Jan. 2, 2018) (citing *Mulcahey*, 29 F.3d at 151). If, at any time before final judgment, "it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

## III.   DISCUSSION

### a.   Original Jurisdiction

Remand of the three Magistrate Court matters to the Kanawha Magistrate Court is proper, because this Court lacks original jurisdiction under 28 U.S.C. §§ 1331-1332.

### i.   Federal Question Jurisdiction

The Magistrate Court matters do not invoke federal-question jurisdiction pursuant to 28 U.S.C. § 1331. First, a petition for a personal safety order pursuant to West Virginia statute does not "arise under" federal law—as a number of federal district courts have observed in the same circumstances with respect to similar state laws. *See, e.g., Banks v. Banks*, 18-cv-07334, 2019 WL 2180225, at *5 (N.D. Cal. Mar. 11, 2019), *adopted*, 2019 WL 2180217 (N.D. Cal. Apr. 2, 2012) ("Applications for domestic-violence restraining orders do not arise under federal law and, without more, the court lacks federal-question jurisdiction."); *Rice v. Rice*, 10-cv-2002, 2010 WL 2090088 (D. Minn. May 21, 2010)

(finding that petition for order of protection did not "arise under" federal law pursuant to 28 U.S.C. § 1331 and remanding to state court for lack of subject matter jurisdiction). Moreover, Respondents have not relied on § 1331 to support their position that this Court has subject-matter jurisdiction over the instant action. In both Respondent Heine's November 19, 2022 "Notice of Removal of Civil Action," as well as the January 12, 2022 Keane Notice, Respondents expressly assert that their "removal is pursuant to 28 U.S.C. § 1332." (ECF Nos. 1 at 1 ¶ 2; 8 at 1 ¶ 3.) Accordingly, the undersigned **FINDS** that this Court lacks subject-matter jurisdiction over the instant action based upon any federal question pursuant to 28 U.S.C. § 1331.

### ii.   Diversity of Citizenship

Respondents failed to demonstrate that this Court has subject-matter jurisdiction over the instant action based on diversity of citizenship pursuant to 28 U.S.C. § 1332. To meet the jurisdictional standard under § 1332, Respondents must demonstrate both that "[1] the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and [2] is between . . . citizens of different States" (hereinafter the "amount in controversy" component and the "diversity" component). 28 U.S.C. § 1332(a)(1). Here, Respondents satisfied neither component.

### 1.   Domicile of the Parties

Respondents have not met their burden to demonstrate that their states of citizenship are "diverse," or different, from Petitioner's state of citizenship. *Id.* When an action is removed on the basis of diversity, the removing party need only include a "short and plain statement" setting forth the grounds for removal. 28 U.S.C. § 1446(a); *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 83, 89 (2014). However, "[t]he burden of persuasion for establishing diversity jurisdiction . . . remains on the party

asserting it," and "[w]hen challenged on allegations of jurisdictional facts, the parties must support their allegations by competent proof." *Hertz Corp. v. Friend*, 559 U.S. 77, 96-97 (2010). With exceptions not applicable here, diversity jurisdiction under § 1332 "requires complete diversity among parties, meaning that the citizenship of every plaintiff must be different from the citizenship of every defendant." *Cunningham v. Cunningham*, No. CV ELH-16-1747, 2016 WL 8671845, at *2 (D. Md. June 24, 2016) (citing *Cent. W. Va. Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011)). Consequently, in a case with one plaintiff and more than one defendant, if the state of citizenship of a single defendant is the same as the plaintiff's state of citizenship, this fact "deprives the district court of original diversity jurisdiction over the entire action." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553, (2005) (citations omitted). *Tri-State Prop. Rentals, LLC v. Cabell Cty. Mag. Ct.*, 3:23-CV-00072, 2023 WL 2960804, at *7 (S.D.W. Va. Mar. 20, 2023), *adopted*, 2023 WL 2957482 (S.D.W. Va. Apr. 14, 2023).

Here, it is undisputed that, for purposes of a § 1332 determination, Respondents Heine and Knorr are citizens of New Jersey, and Respondent Keane is a citizen of Maine. (ECF Nos. 1 at 1 ¶ 2; 5 at 1, 3; 8 at 1 ¶¶ 1-3.) However, Petitioner has challenged Respondents' allegations of jurisdictional facts as to *Petitioner's* state of citizenship. (*See, e.g.*, ECF No. 5 at 1, 3.) Based on the record before the Court, the undersigned **FINDS** that Respondents wholly failed to demonstrate that Petitioner is a citizen of West Virginia and thus diverse in citizenship from Respondents.

First, Respondents carry the burden to demonstrate Petitioner's state of *citizenship*; however, they merely allege in Respondent Heine's Notice of Removal and in the Keane Notice that Petitioner "is a resident of W[est] V[irginia]." (*See* ECF Nos. 1 at 1 ¶ 2; 8 at 1 ¶ 1). A party's *residence* is not always synonymous with his or her *citizenship*.

*See Shaw v. Quincy Mining Co.*, 145 U.S. 444, 447 (1892). Thus, merely alleging a party's state of citizenship is insufficient to establish the diversity component within § 1332 in this context. *See Foster v. Zhang*, 2:22-cv-344, ECF No. 9 at 2 (S.D. W. Va. Oct. 20, 2022) (citing *Robertson v. Cease*, 97 U.S. 646, 648 (1878) ("Citizenship and residence, as often declared by this court, are not synonymous terms.")). *See also Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 195 (4th Cir. 2017) ("For purposes of diversity jurisdiction, residence is not sufficient to establish citizenship"); *Axel Johnson, Inc. v. Carroll Carolina Oil Co., Inc.*, 145 F.3d 660, 663 (4th Cir. 1998) ("[S]tate citizenship for purposes of diversity jurisdiction depends not on residence, but on national citizenship and domicile . . . and the existence of such citizenship cannot be inferred from allegations of mere residence, standing alone").

Instead, "a natural person is a citizen of the state in which he or she is domiciled[.]"[9] *Sandel v. Quality Stone Veneer, Inc.*, 15-CV-01956-PAB, 2015 WL 5302477, at *2 (D. Colo. Sept. 10, 2015) (quoting *Smith v. Cummings*, 445 F.3d 1254, 1259 (10th Cir. 2006)). *Accord Bloom v. Library Corp.*, 112 F. Supp. 3d 498, 502-03 (N.D. W. Va. 2015). The location of a person's domicile turns on the individual's intent: a mere *resident* intends to reside in the place "for the time being," while a *domiciliary* "has an intention to remain in the state indefinitely." *Scott*, 865 F.3d at 195 (citing *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989)). *See also Blankenship v. Fox News Network, LLC*, 510 F. Supp. 3d 356, 365 (S.D. W. Va. 2020) (explaining that a person's

---

[9] WVDHHR was appointed as Petitioner's guardian in the Guardianship action, and subsequently initiated the Magistrate Court matters; consequently, WVDHHR, not Petitioner, is the named party in this case. Congress addressed this technicality specifically in § 1332, providing that "the legal representative of an infant or incompetent shall be deemed to be a citizen only of the same State as the infant or incompetent." 28 U.S.C. § 1332(c)(2). Thus, the Court must determine the state in which *Petitioner* was domiciled at the time of removal, regardless of her legal status as a protected person.

domicile "is the state in which that person lives with intent to make it a fixed and permanent home") (quotation omitted). "While a person may have multiple residences, or multiple places where they may be physically present, a person has only one domicile." *Cobb v. W. Va. United Health Sys., Inc.*, 2:21-cv-597, 2022 WL 1207818, at *3 (S.D. W. Va. Apr. 22, 2022) (quoting *C.I.R. v. Swent*, 155 F.2d 513, 515 n.3 (4th Cir. 1946)). This domicile is the individual's "true, fixed, principal, and permanent home, to which [she] intends to return and remain even though currently residing elsewhere." *Cobb*, 2022 WL 1207818, at *2-3 (quoting *United States v. Venturella*, 391 F.3d 120, 125 (2d Cir. 2004)). Thus, temporary residence in another state, when "coupled with an intent to return home," does not change a person's domicile. *Cobb v. W. Va. United Health Sys., Inc.*, 2:21-cv-597, 2022 WL 1207818, at *4 (S.D. W. Va. Apr. 22, 2022).

When assessing where a person is domiciled, the Fourth Circuit set forth the following "non-exhaustive list of factors" to consider: voter registration; current residence; the location of real and personal property; location of bank and brokerage accounts; membership in clubs, churches, or other associations; place of employment or business; driver's license and automobile registration; and the state to which a person pays taxes (hereinafter, collectively the "*Cobb* factors"). *Cobb*, 2022 WL 1207818, at *3 (citing 13E Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3612 (3d ed. 2009)). "No single factor is dispositive." *Id.*

Here, as it is undisputed that Respondents are from Maine and New Jersey, Respondents appear to argue that the parties are diverse in citizenship because, at the time of removal, Petitioner resided in West Virginia, and a West Virginia State agency—the WVDHHR—was appointed to serve as Petitioner's appointed guardian. The record, however, does not support Respondent's position. First, Petitioner's counsel alleges that,

15

in response to learning of the NJP's investigation, Respondents kidnapped Petitioner from her home in New Jersey and transported Petitioner to West Virginia against her will. Petitioner's evaluation at CAMC indicated that Petitioner had no memory of agreeing to travel to West Virginia; in fact, CAMC staff allegedly reported that Petitioner was not even aware she had set foot in the State of West Virginia at all, and believed she was still at her home in Verona, New Jersey—the place where she had been politically active for many years. Further, the record indicates that NJP officers investigated Petitioner's disappearance and were leading efforts to secure Petitioner's return to New Jersey, and that Petitioner's continued presence in West Virginia was attributable to her hospitalization at CAMC.

While Respondents dispute Petitioner's allegations, Respondents' own representations in court documents support a finding that New Jersey, not West Virginia, was Petitioner's domicile at the time of removal. For instance, in her Response to the Petition for TPSO filed by Respondent Heine filed in the Magistrate Court matters, Heine argued that "[t]here is a question of what jurisdiction the State of W[est] V[irginia] can exert over [Petitioner] Marilynn English." (ECF No. 5-4 at 19.) Heine represented that she, Respondent Knorr, and Petitioner "are domiciliaries of New Jersey." *Id.* Additional representations by Respondents Heine and Keane indicate that, at the time of the events giving rise to the instant action, Petitioner emptied her bank account in Maine, listed her house in Maine for sale, arranged for the transportation of her personal property from Maine to her home in New Jersey, and returned to her New Jersey home. Finally, Heine represented that, to her knowledge, Petitioner "has no bank accounts or assets" in West Virginia, and that Petitioner's "only financial transaction" in West Virginia was to purchase "dinner at Captain D's" while being transported by Heine. *Id.*

In short, the record is wholly devoid of any indication that, at the time of removal, Petitioner intended to make West Virginia a fixed and permanent home. Petitioner's presence in West Virginia via alleged kidnapping and her subsequent hospital stay at CAMC were plainly insufficient to change her State of domicile from New Jersey to West Virginia. *Id.* at *4. To the contrary, the Fourth Circuit's *Cobb* factors strongly indicate that New Jersey was Petitioner's "true, fixed, principal, and permanent home, to which [she] intend[ed] to return and remain even though currently residing elsewhere." *Cobb*, 2022 WL 1207818, at *2-3. In Respondents' own words, "[t]he Plaintiff is from NJ. Two of the defendants are from NJ." (ECF No. 10 at 5.) As it is undisputed that two of the Respondents are also domiciled in New Jersey, the undersigned **FINDS** that the parties are not diverse in citizenship. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553, (2005) (explaining that a district court is "deprive[d] . . . of original diversity jurisdiction over the entire action" when one or more defendants are domiciled in the same State as the plaintiff). *Accord Tri-State Prop. Rentals, LLC v. Cabell Cty. Mag. Ct.*, 3:23-CV-00072, 2023 WL 2960804, at *7 (S.D.W. Va. Mar. 20, 2023), *adopted*, 2023 WL 2957482 (S.D.W. Va. Apr. 14, 2023). Consequently, this Court lacks subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, and remand is proper.

## 2.  Amount in Controversy

Respondents have not met their burden to demonstrate that "the matter in controversy exceeds the sum or value of $75,000." 28 U.S.C. § 1332(a)(1). As the Fourth Circuit has explained, "[t]he key inquiry in determining whether the amount-in-controversy requirement is met is not what the plaintiff will actually recover," but rather "an estimate of the amount that will be put at issue in the course of the litigation" before the Court. *Scott*, 865 F.3d at 196. As the Sixth Circuit Court of Appeals has explained, the

value of the object of the litigation "is not necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the litigation." *Toutges v. McKaig*, 3:19-CV-352, 2019 WL 5865642, at *3 (E.D. Tenn. Nov. 8, 2019) (quoting *Freeland v. Liberty Mut. Fire Ins. Co.*, 632 F.3d 250, 253 (6th Cir. 2011)).

Respondents argued in the Keane Notice that the amount in controversy in the Financial Exploitation case—currently pending on appeal before the West Virginia Intermediate Court of Appeals—is "intertwined" with the Magistrate Court matters, and should factor into the amount-in-controversy determination in the Magistrate Court matters *sub judice*. (ECF No. 8 at ¶ 4.) Valuing the assets at issue in the Financial Exploitation case—"bank accounts, personal items from two homes and the sale of two homes"—in excess of $245,000.00, Respondents argued that, "without the financial abuse allegations[,] the [Petitioner] would not be able to make claims for the need for the [T]PSO," because "the financial abuse allegations were the reason why a protective order and guardianship would be granted." *Id.*

Petitioner's counsel, Attorney Taylor, conceded that the TPSO petitions in the Magistrate Court matters did "mention" the assets that formed the subject of the Financial Exploitation case; however, the Magistrate Court matters "did not seek recovery of any of those assets." (ECF No. 5 at 9.) In fact, the three Magistrate Court matters did not involve monetary relief in any form, nor any type of relief with respect to any real or personal property. As Attorney Taylor explained:

> A request for a personal safety order is not the proper forum for obtaining monetary relief, or even a basis for ordering a defendant to return personal property. A personal safety order is just that – a request for safety. The Petitions filed in th[e] [Magistrate Court] matter[s] merely sought to keep Marilyn English physically safe from the Defendants, and to prevent them from contacting her or removing her from the hospital.

(ECF No. 5 at 9; *see also* ECF No. 4 at 3.) Thus, while the mere fact that Petitioner did not seek a money judgment is not dispositive, Respondents failed to demonstrate that the consequences resulting from the Magistrate Court matters here—the three TPSOs that restrained Respondents from contacting, entering the residence of, or further harassing, the Petitioner—have a value exceeding $75,000. *See Toutges*, 2019 WL 5865642, at *3.

Following extensive research, the undersigned is unaware of *any* authority—and Respondents have not pointed to any—wherein a federal district court found the amount in controversy was satisfied in this context. To the contrary, most federal courts addressing the issue in similar circumstances reached the opposite conclusion. *See Mihaylo v. Knochel*, 19-cv-08137, 2019 WL 11274831, at *2 (D. Ariz. May 20, 2019); *Banks*, 2019 WL 2180225, at *5; *Wells Fargo Bank v. Cyrus*, 1:10-cv-2064, 2010 WL 3294320, at *4 (N.D. Ga. July 15, 2010), *adopted*, 2010 WL 3294314 (N.D. Ga. Aug. 20, 2010) [hereinafter "*Cyrus*"].

In *Cyrus*, for instance, the bank filed two separate civil actions in Georgia State court: an action for foreclosure on the title to defendant's real property to recover the value defendant owed (the "foreclosure case"), and a separate summary dispossessory proceeding to physically remove defendant from the property so that the bank could take possession (the "ejectment case"). *Id*. Defendant removed the ejectment case to federal district court under 28 U.S.C. § 1332, asserting that the value of the property exceeded $75,000. *Id*. The U.S. District Court for the Northern District of Georgia found that defendant did not satisfy the amount-in-controversy requirement, explaining that the ejectment case was a special type of proceeding under a Georgia statute, where—unlike the foreclosure case—"title to the property [wa]s not at issue . . . but rather only a dispute over the limited right to possession[.]" *Id*. Because defendant's possession of the property,

and not the ownership of the property itself, was at issue in the ejectment action, the *Cyrus* court ruled that "the removing defendant may not rely on the value of the property as a whole to satisfy the amount in controversy requirement." *Id.*

*Cyrus* is instructive in the action *sub judice*. The ejectment case in *Cyrus* merely sought to physically restrain defendant from the property, just as the Magistrate Court matters here sought to physically restrain Respondents from coming into contact with Petitioner pursuant to a special type of proceeding created by West Virginia statute. The ejectment case in *Cyrus* did *involve* the property, but the parties' relative ownership was only at issue in the separate foreclosure case; likewise, the Magistrate Court matters here *involve* Respondents' alleged attempt to steal Petitioner's property, but the parties' relationship to the property is only at issue in the separate Financial Exploitation case. Just as in *Cyrus*, therefore, the Respondents here may not rely on the value of the property to satisfy the amount in controversy requirement. Offering nothing further, the undersigned **FINDS** that Respondents have failed to substantiate their valuation of the Magistrate Court matters *sub judice*. Consequently, this Court lacks subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, and remand is proper.

### b. Timeliness

Independent from the issue of original jurisdiction, Petitioner also challenged Respondents' removal to this Court based upon the procedural defect of untimeliness. The removal statute provides in relevant part that "[t]he notice of removal of a civil action or proceeding shall be filed within 30 days after the *receipt* by the defendant, *through service or otherwise*, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based[.]" 28 U.S.C. § 1446(b)(1) (emphasis added).

Here, the Petitions for TPSO were filed in the Magistrate Court matters on September 22, 2022. That same day, the Kanawha Magistrate Court Clerk served Respondents via certified mail at their last known addresses. While Respondents claim that they did not receive the certified mail from the Kanawha Magistrate Court Clerk and therefore were not served, the record shows that Respondents did receive the TPSO Petitions "otherwise" in accordance with § 1446(b)(1). Respondent Heine contacted Petitioner's counsel, Attorney Taylor, on October 3, 2022, requesting copies of all pleadings. (ECF Nos. 5 at 11; 5-4 at 7.) It is undisputed that, on October 7, 2022, Attorney Taylor responded to Heine's request and "provided the [Respondents] with copies of all pleadings and exhibits." (ECF No. 5 at 11.) As Respondents thus received a copy of the TPSO Petitions in the Magistrate Court matters no later than October 7, 2022, their deadline to file a Notice of Removal pursuant to § 1446 was November 7, 2022. However, Respondent Heine did not file her Notice of Removal until November 28, 2022, and the Keane Notice was not filed until January 17, 2023. (ECF Nos. 1; 8.) Consequently, the undersigned **FINDS** that Respondents' removal petition was untimely under 28 U.S.C. § 1446(b)(1), and remand is proper.

### c. Attorneys' Fees

An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. 28 U.S.C. § 1447(c). Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal; conversely, when an objectively reasonable basis exists, "fees should be denied." *Martin v. Franklin Capital Corp.,* 546 U.S. 132, 141 (2005).

First, Respondent Heine lacked an objectively reasonable basis for seeking removal in all three Magistrate Court matters. At the time of removal, the Kanawha Magistrate Court had not ruled on the pending motion to consolidate the three matters. Heine lacked authority to consolidate them herself, via the removal process or otherwise. Furthermore, as Heine was a named party in only one of these matters, she had no objectively reasonable basis—particularly as a *pro se* party who is not a licensed attorney—to file a notice of removal in the remaining two matters on behalf of Respondents Knorr and Keane, regardless of their consent to the removal. *See Lombard v. Baker*, 2:22-cv-328, 2023 WL 2974933, at \*12 (M.D. Ala. Feb. 22, 2023), *adopted*, 2023 WL 2525509 (M.D. Ala. Mar. 15, 2023) ("Generally, cases, pleadings, and motions filed by a *pro se* litigant on behalf of another are a nullity.").

Moreover, Respondent Heine's lacked an objectively reasonable basis for asserting that there was original jurisdiction over the Magistrate Court matters in this Court based upon diversity of citizenship. Residence and domicile are not synonymous—and the record could support a finding that Heine was aware of the distinction. In support of Heine's claim that the parties were diverse under § 1332, she carefully worded her assertion that "*Plaintiff's attorney represents* that Plaintiff is a *resident* of WV." (ECF No. 1 ¶ 1 (emphasis added).) In proceedings before the Kanawha Magistrate Court, however, Heine repeatedly asserted that Petitioner's *domicile* was New Jersey. (*See, e.g.*, ECF No. 5-4 at 19 (representing, in Heine's Response to the Petition for TPSO, that Heine, Respondent Knorr, *and Petitioner* "are domiciliaries of New Jersey").) Respondent Heine asserted to the Kanawha Magistrate Court that "[t]here is a question of what jurisdiction the State of W[est] V[irginia] can exert over [Petitioner] Marilynn English." *Id.* Even *after* removal to this Court, Respondents asserted in their Motion to Dismiss that "[t]he

Plaintiff is from NJ. Two of the defendants are from NJ." (ECF No. 10 at 5.) The Court ascribes greater proficiency with legal documents to Heine, as the undersigned is aware that Heine has assisted litigants before this Court with drafting and submitting pleadings and other Court filings. Taken together, the undersigned **FINDS** that Respondent Heine lacked an objectively reasonable basis for asserting that there was original jurisdiction based upon diversity of citizenship under 28 U.S.C. § 1332.

Furthermore, the effect of Respondents' removal cannot be ignored. In a similar case where an order of protection against harassment from respondent was sought in state court on behalf of an incapacitated patient, the federal district court noted that removal to federal court in the midst of such time-sensitive, urgent summary proceedings frustrates a state's efforts to protect the people within its borders. *Mihaylo*, 2019 WL 11274831, at *3. The *Mihaylo* court went on to explain its concern that the respondent sought to "use this court to make an end run around the state courts" and thereby "interfer[e] in [the petitioner's] ongoing attempts to stop [the respondent's] continuing harassment." *Id.* Viewing the matter *sub judice* against the backdrop of the serious allegations of fraud and other misconduct, the undersigned is concerned that Respondents, led by Heine, acted in bad faith in invoking this Court's jurisdiction, knowing that they lacked an objectively reasonable basis to do so.

As *pro se* litigants, Respondents' pleadings must be "accorded liberal construction." *Erickson v. Pardus*, 551 U.S. 89 (2007) (*per curiam*). Nevertheless, a party's *pro se* status "does not provide a license to abuse the judicial system." *Toutges*, 2019 WL 5865642, at *9. By removing the Magistrate Court matters without an objectively reasonable basis to do so, and by making misleading representations to this Court, the undersigned **FINDS** that Respondents have indeed abused the legal system.

Accordingly, the undersigned **RECOMMENDS** an award to Petitioner—reflecting the "just costs and any actual expenses, including attorney fees, incurred as a result of the removal" under 28 U.S.C. § 1447(c)—to the extent deemed appropriate by the presiding District Judge. *See Circle Indus. USA, Inc. v. Parke Constr. Grp., Inc.*, 183 F.3d 105, 109 (2d Cir. 1999) (awarding attorney's fees when the *pro se* defendant lacked a reasonable basis for removal, removed for an improper purpose, and subjected the plaintiff to unnecessary expense and harassment); *Ins. Co. of State of Pa. v. Waterfield*, 371 F. Supp. 2d 146, 151 (D. Conn. 2005) (granting fee request under § 1447(c) against *pro se* defendant who engaged in a "pattern" of "dilatory tactics").

## IV.   RECOMMENDATION

For the foregoing reasons, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion to Remand (ECF No. 4) be **GRANTED**, and that this matter be **REMANDED** to the Magistrate Court of Kanawha County, West Virginia. The undersigned further respectfully **RECOMMENDS** that Petitioner's request for an award of costs and expenses pursuant to 28 U.S.C. § 1447(c) be **GRANTED**, to the extent deemed appropriate by the presiding District Judge.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, Chief United States District Judge. Pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from the date of the filing of this Proposed Findings and Recommendation to file with the Clerk of this Court specific written objections identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Copies of any objections shall be provided to the opposing party or, if it is represented by counsel, to its counsel, and to Judge Johnston.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Fourth Circuit Court of Appeals. 28 U.S.C. § 636(b)(1); *see Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).

The Clerk is **DIRECTED** to file this Proposed Findings and Recommendation, transmit a copy to counsel of record via the Court's CM/ECF system, and mail a copy of the same to the *pro se* Respondents at their addresses of record.

ENTER:      June 20, 2023

Dwane L. Tinsley
United States Magistrate Judge